1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DIANE GROSSBOHLIN,

11             Plaintiff,                    No. CIV S-07-0639 DAD

12        v.

13   MICHAEL J. ASTRUE,              ORDER
     Commissioner of Social Security,
14
               Defendant.
15   _____/

16             This social security action was submitted to the court, without oral argument, for

17   ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

18   judgment.  For the reasons explained below, plaintiff's motion for summary judgment is granted,

19   the decision of the Commissioner of Social Security (Commissioner) is reversed, and this matter

20   is remanded for further proceedings consistent with this order.

21                          **PROCEDURAL BACKGROUND**

22             On January 28, 2004, plaintiff applied for disability benefits under Title II of the

23   Social Security Act (Act).  (Transcript (Tr.) at 64-66.)  Plaintiff's application was denied initially

24   on June 10, 2004, and upon reconsideration on September 9, 2004.  (Tr. at  24-43.)  Pursuant to

25   plaintiff's timely request, a hearing was held before an administrative law judge (ALJ) on

26   January 18, 2006, at which time plaintiff was represented by counsel and testified.  (Tr. at 44,

                                            1

437-71.)  In a decision issued on March 28, 2006, the ALJ determined that plaintiff was not disabled through that date.  (Tr. at 13-23.)  The ALJ entered the following findings:

1.  The claimant met the disability insured status requirements of the Act on April 26, 2003, the date the claimant alleges she became unable to work, and continues to meet them through the date of this decision.

2.  The claimant has not performed substantial gainful activity since April 26, 2003.

3.  The medical evidence establishes that the claimant has severe depression and diabetes, but that she does not have an impairment, or combination of impairments, listed in or equivalent in medical severity to one listed in, Appendix 1, Subpart P, Regulations No. 4.

4.  The allegations of the claimant and her family are not credible.

5.  The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work, except:  she can lift and carry up to fifty pounds occasionally and twenty-five pounds frequently; she can stand/walk up to six hours in a workday; she cannot climb ladders or scaffolding, but can climb stairs; she cannot work at unprotected heights or around dangerous machinery; she cannot perform a job that requires good hearing in the left ear; she can perform only unskilled tasks (20 CFR 404.1545).

6.  The claimant's past relevant unskilled work as hospital housekeeper does not require the performance of work-related activities precluded by the above limitations (20 CFR 404.1565).

7.  The claimant's impairments do not prevent the claimant from performing his [sic] past relevant work.

8.  The claimant's residual functional capacity for the full range of medium work is reduced by the following limitations:  she cannot climb ladders or scaffolding, but can climb stairs; she cannot work at unprotected heights or around dangerous machinery; she cannot perform a job that requires good hearing in the left ear; she can perform only unskilled tasks.

9.  The claimant is 54 years old, which is defined in the regulations as "approaching advanced age" (20 CFR 404.1563).

2

10.     The claimant has a 12th grade education (20 CFR 404.1564).

11.     If the claimant had the residual functional capacity to perform the full range of medium work, given her age, education, and work experience, section 404.1569 of Regulations No. 4 and section 416.969 of Regulations No. 16, and Rule 203.21, Table No. 3, Appendix 2, Subpart P, Regulations No. 4, would direct a finding that the claimant is "not disabled."

12.     Although the claimant's additional nonexertional limitations do not allow her to perform the full range of medium work, using the above cited rule(s) as a framework for decisionmaking, there are a significant number of jobs in the national economy that she could still perform. Example of such jobs are:  kitchen helper, with 15,000 jobs in the state; hand packager, with 13,000 jobs in the state; cashier, with 160,000 jobs; mail clerk, with 10,000 jobs. Thus, the claimant would not be disabled, even if she were unable to perform her past work.

13.     The claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520(f) and (g)).

(Tr. at 21-22.)

On April 8, 2006, plaintiff requested review of the ALJ's decision.  (Tr. at 8-9.) The Appeals Council denied the request on February 16, 2007.  (Tr. at 5-7.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on April 3, 2007.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant evidence as

1    a reasonable mind might accept as adequate to support a conclusion.  Morgan, 169 F.3d at 599;

2    Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389,

3    401 (1971)).

4           A reviewing court must consider the record as a whole, weighing both the

5    evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Jones, 760

6    F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum

7    of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

8    substantial evidence supports the administrative findings, or if there is conflicting evidence

9    supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

10   Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

11   improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

12   1335, 1338 (9th Cir. 1988).

13          In determining whether or not a claimant is disabled, the ALJ should apply the

14   five-step sequential evaluation process established under the Social Security regulations.  Title 20

15   of the Code of Federal Regulations, Section 404.1520, sets forth the test used to assess disability.

16   See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The five-step process can be summarized

17   as follows:

18          Step one: Is the claimant engaging in substantial gainful activity?
            If so, the claimant is found not disabled.  If not, proceed to step
19          two.

20          Step two: Does the claimant have a "severe" impairment?  If so,
            proceed to step three.  If not, then a finding of not disabled is
21          appropriate.

22          Step three: Does the claimant's impairment or combination of
            impairments meet or equal an impairment listed in 20 C.F.R., Pt.
23          404, Subpt. P, App. 1?  If so, the claimant is conclusively
            presumed disabled.  If not, proceed to step four.
24
            Step four: Is the claimant capable of performing his past work?  If
25          so, the claimant is not disabled.  If not, proceed to step five.

26   /////

1
2
> Step five: Does the claimant have the residual functional capacity
> to perform any other work?  If so, the claimant is not disabled.  If
> not, the claimant is disabled.

3   Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

4          The claimant bears the burden of proof in the first four steps of the sequential

5   evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the

6   sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098

7   (9th Cir. 1999).

8                                    **APPLICATION**

9          Plaintiff advances three arguments in her motion for summary judgment.  First,

10  she argues that the ALJ failed to credit the opinions of her treating physicians and the examining

11  physician and did not properly assess her severe impairments.  Second, she contends that the ALJ

12  failed to credit her statements as to the nature and extent of her pain and functional limitations, as

13  required by law.  Third, she asserts that the ALJ failed to include all of her limitations in the

14  hypothetical posed to the vocational expert.  These arguments are addressed below.

15  **I.  Step Two:  Determination of Severe Impairments**

16         Plaintiff's first argument challenges the ALJ's decision at step two of the

17  sequential evaluation process.  At step two, the ALJ must determine if the claimant has a

18  medically severe impairment or combination of impairments.  Smolen v. Chater, 80 F.3d 1273,

19  1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41).

20         Pursuant to the Commissioner's regulations, "[a]n impairment or combination of

21  impairments is not severe if it does not significantly limit [the claimant's] physical or mental

22  ability to do basic work activities."[1]  20 C.F.R. § 416.921(a).  The severity regulation serves to

23
24         [1] Basic work activities encompass "the abilities and aptitudes necessary to do most jobs,"
including (1) physical functions such as walking, standing, sitting, lifting and carrying, (2)
capacities such as seeing, hearing, and speaking, (3) understanding, carrying out, and
25  remembering simple instructions, (4) use of judgment, (5) responding appropriately to
supervision, co-workers, and usual work situations, and (6) dealing with changes in a routine
26  work setting.  20 C.F.R. § 416.921(b).

1 "identify[] at an early stage those claimants whose medical impairments are so slight that it is

2 unlikely they would be found to be disabled even if their age, education, and experience were

3 taken into account." Yuckert, 482 U.S. at 153.  "An impairment or combination of impairments

4 may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more

5 than a minimal effect on an individual's ability to work.'"  Webb v. Barnhart, 433 F.3d 683, 686

6 (9th Cir. 2005) (quoting Smolen, 80 F.3d at 1290, and adding emphasis).  "If such a finding is

7 not clearly established by medical evidence, however, adjudication must continue through the

8 sequential evaluation process."  Social Security Ruling (SSR) 85-28, 1985 WL 56856, at *3-4.

9 "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims[.]'"

10 Webb, 433 F.3d at 687 (quoting Smolen, 80 F.3d at 1290.  See also Edlund v. Massanari, 253

11 F.3d 1152, 1158-59 (9th Cir. 2001).

12      Here, the ALJ determined that plaintiff "is impaired as a result of diabetes and

13 depression" and "cannot perform heavy lifting or complex job tasks."  (Tr. at 14.)  Although

14 plaintiff's treating physicians and examining physician Dr. Selcon diagnosed additional

15 impairments, including Meniere's disease and fibromyalgia or a fibromyalgia-like syndrome, the

16 ALJ concluded that "the evidence contains no signs, symptoms, or laboratory findings to support

17 a diagnosis of fibromyalgia, irritable bowel syndrome, or arthritis."  (Id.)  Opining that "[t]he

18 claimant's treating physicians never carried out the proper tests to confirm their diagnoses of

19 disabling impairments," the ALJ rejected the opinions of plaintiff's treating physicians and

20 examining physician Selcon with regard to all impairments other than diabetes and depression.[2]

21 (Tr. at 19.)

22      It is well established that the weight to be given to medical opinions depends in

23 part on whether they are proffered by treating, examining, or non-examining professionals.

24

25    [2] The ALJ asserted that "[a]t the hearing, the claimant conceded that none of her treating
physicians had actually tested her for fibromyalgia."  (Tr. at 18.)  In fact, plaintiff had described
26 in detail an examination for trigger points by Dr. Paladino.  (Tr. at 463-64.)

6

1   Lester, 81 F.3d at 830.  "As a general rule, more weight should be given to the opinion of a

2   treating source than to the opinion of doctors who do not treat the claimant."  Id.  This is so

3   because a treating doctor is employed to cure and has a greater opportunity to know and observe

4   the patient as an individual.  Id.; Smolen, 80 F.3d at 1285; Bates v. Sullivan, 894 F.2d 1059,

5   1063 (9th Cir. 1990).  However, the ALJ need not give weight to conclusory opinions supported

6   by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999);

7   Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

8           "At least where the treating doctor's opinion is not contradicted by another doctor,

9   it may be rejected only for 'clear and convincing' reasons."  Lester, 81 F.3d at 830 (quoting

10  Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)).  "Even if the treating doctor's opinion

11  is contradicted by another doctor, the Commissioner may not reject this opinion without

12  providing 'specific and legitimate reasons' supported by substantial evidence in the record for so

13  doing."  Lester, 81 F.3d at 830 (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).

14  If a treating professional's opinion is contradicted by an examining professional's opinion that is

15  supported by different, independent clinical findings, the ALJ may resolve the conflict.  Andrews

16  v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes, 881 F.2d at 751).  The opinion

17  of a non-examining professional, without other evidence, is an insufficient basis for rejecting the

18  opinion of either a treating or examining professional.  Lester, 81 F.3d at 831.

19          In the present case, the ALJ gave no weight to the opinions of plaintiff's treating

20  physicians and examining physician Selcon, except with regard to her diabetes and depression,

21  and relied instead on the opinions of state agency physicians who did not treat or examine

22  plaintiff.  (Tr. at 20.)  The ALJ's stated reason for giving "greater weight to the assessments of

23  the State Agency physicians" was that "they are more consistent with the evidence."  (Tr. at 20,

24  citing Ex. 11F [tr. at 313-20].)

25          Exhibit 11F, cited by the ALJ, is a physical residual functional capacity

26  assessment prepared by Corazon C. David, M.D., on June 7, 2004.  (Tr. at 320.)  Dr. David

1  indicated a primary diagnosis of "myofascial pains - shoulder," with no secondary diagnosis and

2  no identification of any other alleged impairments.  (Tr. at 313.)  Based on his diagnosis of

3  myofascial pains, Dr. David entered tick marks in boxes on the form to indicate that plaintiff can

4  occasionally lift and/or carry up to 50 pounds, can frequently lift and/or carry up to 20 pounds,

5  can stand and/or walk with normal breaks for a total of about 6 hours in an 8-hour workday, can

6  sit with normal breaks for a total of about 6 hours in an 8-hour workday, can perform unlimited

7  pushing and pulling, and should never climb ladders or scaffolds because of vertigo but can

8  occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl.  (Tr. at 314-15.)  Dr.

9  David found no manipulative, visual, communicative, or environmental limitations, except that

10  plaintiff should avoid working at heights because of vertigo.  (Tr. at 316-17.)  In Dr. David's

11  opinion, the degree of subjective limitations alleged by plaintiff was not supported by objective

12  findings.  (Tr. at 318.)

13      Although the ALJ stated that he gave greater weight to the assessments of the

14  state agency physicians, it does not appears that the ALJ relied on any opinion other than Dr.

15  David's.  Although the record contains a psychiatric review technique form dated May 25, 2004,

16  the ALJ rejected the state agency evaluator's opinion that plaintiff has no severe mental

17  impairment.[3]  (Tr. at 19.)  The evaluator found that the medically determinable impairments of

18  depression, not otherwise specified, and anxiety, not otherwise specified, were present but did

19  not meet the requirements of Listing 12.04 (Affective Disorders) or Listing 12.06 (Anxiety-

20  Related Disorders).  (Tr. at 299, 301.)  The evaluator concluded, without comment or

21  explanation, that plaintiff's mental impairments are "not severe."  (Tr. at 296.)  Nonetheless, the

22  ALJ decided that plaintiff's depression is a severe impairment.  (Tr. at 19.)

23      Treating physicians Kifune, Van Fossan, Balfour, and Weyrauch, as well as

24  emergency room staff, diagnosed plaintiff with Meniere's disease (see tr. at 278-79, 279-80, 282,

25

26      [3]  The signature on the May 25, 2004 form is indecipherable, and the medical professional's qualifications are not indicated.  (See tr. at 296-309.)

8

398, 411) and fibromyalgia and/or chronic pain syndrome or fibromyalgia-like symptoms (see tr. at 270-71, 273, 275, 278-80, 326, 396, 426), in addition to type II diabetes (see tr. at 227-28, 273, 278, 279-80, 282, 408, 411, 427) and depression (see tr. at 239, 270, 398).  The record reflects that these diagnoses were based on clinical observation, patient history, reported symptomology, glucose readings, blood work, and radiological evidence.  Treatment notes show that plaintiff reported the following symptoms supporting the diagnoses of Meniere's disease and fibromyalgia:  chronic pain (see tr. at 227-28, 239, 270, 273, 279-80, 325-26, 396, 398, 406, 426), dizziness or vertigo (see tr. at 219-20, 239, 261, 262, 272, 278, 325-26, 411, 413, 435), fatigue (see tr. at 278, 393, 411), vomiting, nausea, and diarrhea (see tr. at 219-20, 227, 262, 273, 276, 278, 398), dyspnea/shortness of breath (see tr. at 227-28, 393, 426, 427), and forgetfulness (see tr. at 270, 272).

    The treatment notes also show that the diagnosis of Meniere's disease was supported by laboratory testing, hearing tests, and radiological evidence, while the diagnosis of fibromyalgia was properly made on the basis of plaintiff's subjective reports of pain and other symptoms.  See Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004) ("Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms."). Although there is a generally agreed-upon set of diagnostic criteria for fibromyalgia, there are no laboratory tests that will confirm the diagnosis.[4] Id. at 589-90 (9th Cir. 2004); Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 872 (9th Cir. 2004); Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001).  "Common symptoms . . . include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance

---

    [4] According to the Mayo Clinic, the guidelines established by the American College of Rheumatology are controversial, and some specialists question whether the guidelines are useful. Mayo Found. for Med. Educ. & Research, Fibromyalgia, "Fibromyalgia symptoms or not?," at http://www.mayoclinic.com/health/fibromyalgia-symptoms/AR00054/NSECTIONGROUP=2 (last modified Aug. 29, 2007).

1   that can exacerbate the cycle of pain and fatigue associated with this disease." Benecke, 379

2   F.3d at 589-90.

3          The record in this case includes two evaluations by consultative examiners.  On

4   May 8, 2004, James A. Wakefield, Ph.D., performed a psychological evaluation of plaintiff.  (Tr.

5   at 285-88.)  After administering several tests and observing plaintiff's mental status, Dr.

6   Wakefield diagnosed depressive disorder, not otherwise specified, and anxiety disorder, not

7   otherwise specified.  (Tr. at 288.)  During testing, Dr. Wakefield observed that some of the visual

8   tests made plaintiff feel nauseous and that she had to take short breaks after completing those

9   tests.  (Tr. at 286.)  Dr. Wakefield found plaintiff able to follow simple and more complex work

10   procedures and able to interact with co-workers, supervisors, and the public.  (Tr. at 288.)  He

11   also found her able to sit, stand, walk, move about, handle objects, hear, speak, and travel

12   adequately but he observed that "pain and feelings of nausea limit the duration of some of these

13   tasks."  He found her able to reason and make occupational, personal, and social decisions in her

14   best interests, but he found her "social and behavioral functioning affected by emotional factors."

15   (Id.)  Although Dr. Wakefield expressly noted limitations caused by pain and nausea and by

16   emotional factors, the ALJ concluded that Dr. Wakefield "found no limitations."  (Tr. at 17.)

17   Despite Dr. Wakefield's diagnosis of anxiety as well as depression, and despite the indication of

18   limitations caused by emotional factors, the ALJ did not identify anxiety disorder as one of

19   plaintiff's severe impairments.

20          On May 20, 2004, Sanford Selcon, M.D., performed a complete internal medicine

21   evaluation of plaintiff.  (Tr. at 289-95.)  Dr. Selcon reviewed the records that were made

22   available, including a medical record pertaining to the diagnosis of Meniere's disease and the

23   disability report and daily activity questionnaire completed by plaintiff.  (Tr. at 290.)  Dr. Selcon

24   found plaintiff to be a fair historian.  (Tr. at 289.)  He noted that she complained of fibromyalgia,

25   diabetes, anxiety, and stress.  (Id.)  Although he recorded information provided by plaintiff, he

26   based his physical examination findings on formal testing and observations of plaintiff's

1   spontaneous action.  (Tr. at 289, 291.)  He described plaintiff as anxious.  (Tr. at 291.)  His

2   impressions included (1) history of fibromyalgia; (2) diabetes mellitus; (3) history of chronic

3   anxiety; (4) chronic low back pain, coccygeal pain, left leg pain, bilateral shoulder pain, and hand

4   and knee pain related to possible fibromyalgia and/or lupus to be confirmed; (5) Meniere's

5   disease; and (6) chronic pain syndrome.  (Tr. at 293.)  His functional assessment was as follows:

6          The number of hours that the claimant could sit in an 8-hour work
           period is without limitations.  The number of hours that the
7          claimant could stand/walk in an 8-hour work period is up to 6
           hours limited by her back pain.  The amount of weight that the
8          claimant could lift/carry would be 20 lbs occasionally.  There
           would be postural limitations of climbing, stooping, kneeling, and
9          crouching because of back pain.  There is no limitation to
           manipulation.  There are no visual, communicative, or workplace
10         environmental limitations.

11  (Tr. at 293.)  Despite the fact that Dr. Selcon's impressions are consistent with the treating

12  physicians' diagnoses and their treatment records, the ALJ determined that plaintiff's severe

13  impairments consisted solely of diabetes and depression.

14         The ALJ's contention that the state agency physicians' assessments were "more

15  consistent with the evidence" than the diagnoses and opinions of the treating and examining

16  physicians is not supported by the record.  The diagnoses of Meniere's disease and fibromyalgia

17  or chronic pain syndrome are supported by substantial evidence in the record, and the opinion of

18  a non-treating, non-examining state agency physician, without other evidence, does not provide a

19  sufficient basis for rejecting the uncontradicted diagnoses of treating and examining physicians.

20  See Lester, 81 F.3d at 831.  The ALJ's assertion that the treating physicians "never carried out

21  the proper tests to confirm their diagnoses of disabling impairments" is contradicted by the

22  record as to both Meniere's disease and fibromyalgia.  In addition, the ALJ's assertion regarding

23  proper tests is not supported by the opinion of any medical professional and does not constitute a

24  legitimate reason for giving no weight to the diagnoses rendered by the treating and examining

25  physicians.  See Lester, 81 F.3d at 830; Murray, 722 F.2d at 502.

26  /////

                                          11

1    Having failed to present clear and convincing reasons for rejecting the treating and

2  examining physicians' uncontradicted diagnoses of fibromyalgia and Meniere's disease, the ALJ

3  erred when he failed to identify these conditions, together with diabetes and depression, as severe

4  impairments at step two of the sequential evaluation process.  The uncontradicted diagnoses of

5  fibromyalgia and Meniere's disease, the treatment records related to these impairments, and

6  plaintiff's subjective testimony regarding the symptoms and limitations arising from the

7  impairments establish that these impairments are more than slight abnormalities that have a

8  minimal effect on plaintiff's ability to work.

9    The undersigned therefore finds that the ALJ erred when he failed to identify

10  fibromyalgia and Meniere's disease as severe impairments at step two.  The decision is not

11  supported by substantial evidence in the record as a whole and must be reversed.  See Schneider,

12  223 F.3d at 973; Morgan, 169 F.3d at 599).  In reaching this conclusion, the undersigned is

13  mindful that the step-two inquiry is "a de minimis screening device to dispose of groundless

14  claims."  Smolen, 80 F.3d at 1290.  While the evidence related to the additional impairments may

15  or may not establish disability at step three, and may or may not ultimately lead to a finding of

16  disability in combination with plaintiff's other impairments, it was error not to recognize

17  plaintiff's fibromyalgia and Meniere's disease as severe when the medical evidence does not

18  clearly establish that these impairments have no more than a minimal effect on plaintiff's ability

19  to work.

20    For the reasons set forth above, "adjudication must continue through the

21  sequential evaluation process."  SSR 85-28, 1985 WL 56856, at *3.  Remand is required so that

22  the ALJ can proceed beyond step two of the evaluation process with respect to all of plaintiff's

23  severe impairments and can also properly consider the impairments in combination with all of

24  plaintiff's impairments, whether severe or not.  See Webb, 433 F.3d at 688 (remanding for

25  further proceedings where "[t]he ALJ should have continued the sequential analysis beyond step

26  two because there was not substantial evidence to show that Webb's claim was 'groundless'").

**II.  Steps Four and Five:  Residual Functional Capacity**

In her second and third arguments, plaintiff challenges the ALJ's assessment of her residual functional capacity and his decisions regarding her ability to perform past work or any other work.  Specifically, plaintiff contends that the ALJ failed to credit her statements as to the nature and extent of her pain and functional limitations and then failed to include all of her limitations in the hypothetical posed to the vocational expert.

Once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony regarding subjective pain and other symptoms merely because the symptoms, as opposed to the impairments, are unsupported by objective medical evidence.  Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007); Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).  "'[T]he ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'"  Lingenfelter, 504 F.3d at 1036 (quoting Smolen, 80 F.3d at 1281).

The determination of credibility and the resolution of conflicts in the testimony are functions of the ALJ acting on behalf of the Commissioner.  Morgan, 169 F.3d at 599; Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  In general, an ALJ's assessment of credibility should be given great weight.  Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).  The ALJ may employ ordinary techniques of credibility evaluation and may take into account prior inconsistent statements or a lack of candor by the witness.  Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).  The ALJ may also rely, in part, on his own observations.  See Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989).  However, the ALJ cannot substitute his observations for medical diagnoses.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

"Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan, 169 F.3d at 599.  The "clear and convincing" standard "is the most demanding required

13

1    in Social Security cases." <u>Moore v. Comm'r of the Soc. Sec. Admin.</u>, 278 F.3d 920, 924 (9th

2    Cir. 2002).

3           Here, after summarizing the medical evidence, the ALJ reviewed plaintiff's

4    February 19, 2004 daily activities questionnaire, the February 19, 2004 function report completed

5    by plaintiff's daughter, and plaintiff's testimony at the administrative hearing conducted in

6    January 2006.  (Tr. at 17-18, citing Exs. 2E (tr. at 76-85) & 3E (tr. at 86-94).)  Although the ALJ

7    appears to view certain statements by plaintiff as inconsistent, the undersigned finds that those

8    perceived inconsistencies arise from variations in the status of plaintiff's impairments and the

9    varying effectiveness of treatment at different points in time.  (<u>See</u> tr. at 18-19.)  While the ALJ

10   commented that "[i]f the claimant were truly as disabled by fibromyalgia as she alleges, a referral

11   to a rheumatologist would have been in order," (tr. at 18.), this remark is grounded on the ALJ's

12   flawed conclusion with respect to the treating physicians' diagnoses of fibromyalgia.  In any

13   event, the decisions of plaintiff's treating physicians regarding referrals were not within

14   plaintiff's control and, absent evidence of malingering, do not provide a basis for finding

15   plaintiff's testimony not credible.

16          Based on his review of the testimony regarding subjective pain and other

17   symptoms, the ALJ determined that plaintiff "has shown very little evidence of any

18   abnormalities" and that, "[a]lthough the claimant and her family allege that the claimant is very

19   limited in her ability to perform daily activities, the claimant has done little to establish the

20   existence of an impairment reasonably expected to cause such limitations." (Tr. at 19.)  The ALJ

21   speculated that plaintiff's dizziness was explained by poorly controlled diabetes, which he

22   ascribed to plaintiff's failure to control her diet and her refusal of the diabetic education and

23   nutrition advice offered by a treating physician.  With respect to plaintiff's depression, the ALJ

24   commented that plaintiff had not sought treatment from a mental health professional.  (<u>Id.</u>)  The

25   ALJ therefore concluded that "the allegations of plaintiff and her family are not credible."  (<u>Id.</u>)

26   /////

1       The undersigned finds that the reasons offered for the ALJ's conclusion are

2  unconvincing.  When the opinions of the treating and examining physicians are properly credited,

3  the objective medical evidence demonstrates that plaintiff suffers from impairments that may

4  reasonably be expected to cause some degree of the symptoms and functional limitations

5  described by plaintiff and her daughter.  In the absence of evidence of malingering, the ALJ was

6  required to offer specific, clear, and convincing reasons for rejecting plaintiff's testimony as to

7  the severity of her symptoms and limitations.  The ALJ did not offer such reasons, and his

8  rejection of plaintiff's testimony is grounded in large part on his erroneous rejection of the

9  treating and examining physicians' diagnoses of plaintiff's severe impairments at step two of the

10  sequential evaluation.

11       On remand, the ALJ must properly credit the subjective pain and symptom

12  testimony of plaintiff and her daughter.  The ALJ should keep in mind that claimants need not be

13  "utterly incapacitated to be eligible for benefits."  Fair, 885 F.2d at 603.  See also Webb, 433 F.

14  3d at 688; Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly

15  asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery

16  shopping, driving a car, or limited walking for exercise, does not in any way detract from her

17  credibility as to her overall disability.").  In addition, the ALJ is cautioned that "'it is a

18  questionable practice to chastise one with a mental impairment for the exercise of poor judgment

19  in seeking rehabilitation.'"  Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting

20  Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)).  The ALJ should also consider the

21  applicability of Social Security Ruling 02-01p regarding obesity.

22       The ALJ must re-determine plaintiff's residual functional capacity, giving proper

23  weight to the medical opinions of treating physicians and the statements regarding the severity of

24  plaintiff's symptoms.  If plaintiff is found to have the residual functional capacity to perform any

25  work, the ALJ must conduct a hearing and take the testimony of a vocational expert to determine

26  whether plaintiff can perform jobs that exist in substantial numbers in the national economy.  See

1    Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001).  The expert must be questioned in a

2    manner that properly takes into account all limitations, including nonexertional limitations.  See

3    Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004); Tackett, 180 F.3d at 1103-04.

4    **CONCLUSION**

5        The decision whether to remand a case for additional evidence or to simply award

6    benefits is within the discretion of the court.  Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir.

7    1994); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).  The Ninth Circuit has stated that,

8    "[g]enerally, we direct the award of benefits in cases where no useful purpose would be served

9    by further administrative proceedings, or where the record has been thoroughly developed."

10    Ghokassian, 41 F.3d at 1304 (citing Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396,

11    1399 (9th Cir. 1988)).  This rule recognizes the importance of expediting disability claims.

12    Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001); Ghokassian, 41 F.3d at 1304;

13    Varney, 859 F.2d at 1401.  Here, the record has not been adequately developed to allow the court

14    to find plaintiff disabled simply by crediting her testimony and the opinions of her treating and

15    examining physicians.  Therefore, it is necessary to remand the case for further proceedings

16    consistent with this order.

17        Accordingly, IT IS HEREBY ORDERED that:

18        1.  Plaintiff's motion for summary judgment (Doc. No. 17) is granted;

19        2.  Defendant's cross-motion for summary judgment (Doc. No. 21) is denied;

20        3.  The decision of the Commissioner of Social Security is reversed; and

21        4.  This case is remanded for further proceedings consistent with the analysis set

22    forth herein.  See 42 U.S.C. § 405(g), Sentence Four.

23    DATED: June 23, 2009.

24

25    DAD:kw

26    Ddad1/orders.socsec/grossbohlin0639.order

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE